[Cite as *In re S.K.*, 2024-Ohio-4629.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# DEFIANCE COUNTY

IN RE:

S.K.,

CASE NO. 4-24-07

ADJUDICATED NEGLECTED
AND DEPENDENT CHILD.

O P I N I O N

[KEITH K. - APPELLANT]

---

IN RE:

T.K.,

CASE NO. 4-24-08

ADJUDICATED NEGLECTED
AND DEPENDENT CHILD.

O P I N I O N

[KEITH K. - APPELLANT]

---

IN RE:

M.K.,

CASE NO. 4-24-09

ADJUDICATED NEGLECTED
AND DEPENDENT CHILD.

O P I N I O N

[KEITH K. - APPELLANT]

---

**Appeals from Defiance County Common Pleas Court
Juvenile Division
Trial Court Nos. 35531, 35532 and 35533**

**Judgments Affirmed**

**Date of Decision: September 23, 2024**

---

**APPEARANCES:**

*Taylor G. Vance* **for Appellant**

*Joy S. O'Donnell* **for Appellee**

**MILLER, J.**

{¶1} Appellant, Keith K. ("Keith"), appeals the December 4, 2023 judgment issued by the Defiance County Court of Common Pleas, Juvenile Division, which found that each of his three children were neglected and dependent. Keith argues the trial court erred in making those findings. For the reasons that follow, we affirm.

**I. FACTS AND PROCEDURAL HISTORY**

{¶2} Keith and Lucy P. ("Lucy") are the parents of three children: S.K., T.K., and M.K. All five lived together in a home in Defiance County. At the time the matter was initiated, S.K. was seven years old, T.K. was four years old, and M.K. was three years old.

{¶3} On October 5, 2023, Defiance/Paulding Consolidated Job and Family Services (the "Agency") filed a two-count complaint in the Defiance County Court

of Common Pleas, Juvenile Division. The first count alleged that the three children appeared to be neglected children as defined in R.C. 2151.03(A)(2). The second count alleged that the three children appeared to be dependent children as defined in R.C. 2151.04(C). The Agency asked the court to place the children in the temporary custody of the Agency. The same day, the Agency sought and received from the court an ex parte order for emergency temporary custody of the children. The next day, October 6, 2023, the court held a hearing with the Agency, Keith, and Lucy regarding that order. Following the hearing, the court confirmed and continued its order.

{¶4} On November 17, 2023, the trial court held an adjudicatory hearing. The only witness called by any of the parties was Jenny Snyder ("Snyder"), an investigator for the Agency. On September 28, 2023, Snyder had visited the family's home, a single story structure, after the Agency received reports that the children were climbing onto its roof. Keith acknowledged that the children had climbed onto the roof several times and were hard to control. Keith also told Snyder that the children would not listen to Lucy, so he had to be the enforcer to ensure they would obey. To discourage the children from climbing onto the roof, Keith had wrapped a mat around the antenna they used to get onto the roof, although the children now were accessing the roof from another way. Additionally, he placed a sharp plastic piece, "almost like a spike," by the fence that the children also used to access the roof. (Nov. 17, 2023 Tr. at 13-14). Snyder also learned that S.K. had

killed kittens earlier in the summer and had not gone to a psychological examination, even though Keith admitted S.K. was supposed to undergo such an examination. After learning about this incident, Snyder recommended S.K. also go to therapy.

{¶5} Snyder visited the home again on October 3, 2023, after being alerted that a "domestic violence situation" had occurred there. (*Id.* at 16). Snyder found the door to the home was barricaded to keep the children from leaving the home. That barricaded door was the only working exit from the home. Additionally, Keith had wrapped "sticky brush"—which he described as barbed wire—around the antenna to discourage the children from using it to get onto the roof. (*Id.* at 17). Snyder learned that Keith had left the home for the past two days. After Keith got home, there was an argument, Lucy allegedly threw a box at Keith, and Lucy was arrested. There was no evidence the children were aware of the incident.

{¶6} While Keith had been gone during the previous two days, S.K. had climbed onto the roof again and Lucy was forced to get a neighbor to help get S.K. off of the roof because S.K. would not listen to her. Lucy explained that she was overwhelmed in taking care of the kids while Keith was not at home. Lucy also explained to Snyder that she has an unspecified cognitive diagnosis, for which she receives government benefits. Keith told the Agency that he was Lucy's guardian at one time. Snyder testified that, based on her interactions with Lucy, Lucy did not seem to understand "complex concepts." (*Id.* at 24). For example, it appeared to

-4-

Snyder that Lucy could not correctly read the temperature on a thermometer when Lucy described T.K. having a fever. Additionally, Lucy did not have a phone or any means of communication at the home. During her visit, Snyder observed T.K. and M.K. run onto the road, the children did not listen when Keith called to them, and Keith had to run after them to get them to return home.

{¶7} During Snyder's next visit, on October 5, 2023, T.K. got out of the house—unbeknownst to Lucy—and a sheriff's deputy who was with Snyder had to run after T.K. Keith and Lucy were not using the door alarms and window alarms that the Agency had previously given to them. Additionally, Keith and Lucy reported that, since Snyder's October 3 visit, S.K. had hidden from Keith under a hot, running car and suffered two burns on his feet. Neither Keith nor Lucy knew S.K. was under the car at the time. They took S.K. to a medical facility to treat the burns. Snyder also testified that, as far as the Agency is aware, the house has running water, heat, and food. All three children were still in diapers when the Agency removed them from the house pursuant to the ex parte emergency temporary custody order.

{¶8} On December 4, 2023, the trial court issued a judgment entry in which it made various findings and decided there was clear and convincing evidence that each of the three children were "neglected children in that they lack parental care because of the faults and habits of the children's parents pursuant to R.C. 2151.03(A)(2) and that the children are dependent children pursuant to R.C.

2151.04(C) in that their condition or environment is such as to warrant the state, in the interests of the children, in assuming the children's guardianship." (Dec. 4, 2023 Judgment Entry). The court ordered that the children remain in the temporary custody of the Agency.

**{¶9}** The matter came before the court on December 6, 2023 for disposition. On December 29, 2023, the trial court entered a judgment entry indicating that Keith and Lucy agreed with the Agency's request for the three children to remain in the Agency's temporary custody for a period of one year, unless terminated earlier. The court agreed with the request, found it to be in the children's best interest, and stated that the Agency had established a case plan with the parents but the plan's objectives had not yet been completed. This appeal followed.

## II.    ASSIGNMENTS OF ERROR

**{¶10}** Keith raises two assignments of error for our review:

### First Assignment of Error

**The trial court erred in finding by clear and convincing evidence that the above-named children were neglected children pursuant to R.C. 2151.03(A)(2).**

### Second Assignment of Error

**The trial court erred in finding by clear and convincing evidence that the above-named children were dependent pursuant to R.C. 2151.04(C).**

### III. DISCUSSION

{¶11} Despite Keith's agreement to the Agency's request for the three children to remain in the Agency's temporary custody for a period of one year, he argues in this appeal that the trial court erred in finding, by clear and convincing evidence, that the children were neglected and dependent under certain sections of Chapter 2151 of the Revised Code. Sections in Chapter 2151 of the Revised Code are to be "liberally interpreted and construed so as to effectuate [the purpose] . . . [t]o provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code, whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A).

#### A. First Assignment of Error

{¶12} In the first assignment of error, Keith argues that the testimony and evidence did not "individually or collectively amount to clear and convincing evidence to adjudicate the Children as neglected children." (Appellant's Brief at 10).

#### 1. Applicable Law and Standard of Review

{¶13} "At the adjudicatory hearing, the trial court considers whether the child is a neglected or dependent child." *In re Riddle*, 79 Ohio St.3d 259, 265, 1997-

Ohio-39 (1997). "[C]ourts are not required to wait for a child to be injured or harmed before finding a child is neglected or dependent, [although] there must be some evidence presented beyond a mere possibility of harm." *In re K.J.*, 2020-Ohio-3918, ¶ 14 (3d Dist.).

{¶14} Under R.C. 2151.03(A)(2), a "neglected child" includes a child who "lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian." Thus, before finding a lack of adequate care under R.C. 2151.03(A)(2), there must be some showing that parents, a guardian, or a custodian is at fault. *In re Riddle* at 262; *In re O.M.*, 2023-Ohio-341, ¶ 29 (3d Dist.). The definition of "adequate parental care" is "the provision by a child's parent or parents . . . of adequate food, clothing, and shelter to ensure the child's health and physical safety and the provision by a child's parent or parents of specialized services warranted by the child's physical or mental needs." R.C. 2151.011(B)(1).

{¶15} To determine that a child is a neglected child, the trial court must "find that the essential statutory elements were proven by clear and convincing evidence." *In re Riddle* at 262. R.C. 2151.35(A)(1) provides that, if the court at the adjudicatory hearing finds from clear and convincing evidence that the child is an abused, neglected, or dependent child, then the court shall proceed, in accordance with R.C. 2151.35(B), to hold a dispositional hearing and hear the evidence as to the proper disposition to be made under R.C. 2151.353.

**{¶16}** "When this Court reviews a trial court's adjudication of a child as . . . neglected or dependent to determine whether the judgment is supported by clear and convincing evidence, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear-and-convincing-evidence degree of proof." *In re O.M.* at ¶ 32. Proof by clear and convincing evidence requires that the proof "'produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. It is "'more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases," and it "does not mean clear and unequivocal." *In re Freed Children*, 2009-Ohio-996, ¶ 26 (3d Dist.), quoting *In re Estate of Haynes*, 25 Ohio St.3d 101, 104 (1986).

### 2. Analysis

**{¶17}** All indications are that Keith and Lucy love their children. However, as shown above, that is not the test for determining whether a child is a neglected child or a dependent child under the law. *See also In re Corey Children*, 2006-Ohio-2013, ¶ 20 (11th Dist.) (affirming the court's finding of neglect, premised on a lack of parental supervision appropriate for infants and toddlers, even though the record showed that the Coreys were doting parents, with bright, normal children).

**{¶18}** After reviewing the evidence before the trial court, we find that the Agency presented sufficient evidence to support the allegation of neglect. The three

children are all young, with the oldest being seven at the time of the adjudicatory hearing. Among the evidence was that Lucy admitted to Snyder she has an unspecified cognitive diagnosis, for which she receives benefits, and that Keith represented he was Lucy's guardian at one time. Keith acknowledged that the children were hard to control and would not listen to Lucy. Nevertheless, he left them alone with her for two days. While he was gone Lucy felt overwhelmed and at least one child again climbed onto the roof—despite the measures taken by Keith—and she needed assistance from a neighbor. *See In re A.C.*, 2010-Ohio-4933, ¶ 50 (6th Dist.) (among the evidence supporting a finding of neglect under R.C. 2151.03(A)(2) was the mother's inability to supervise, discipline, and ensure the safety of the children).

{¶19} Despite continuing instances of the children climbing onto the roof and wandering onto the road, Keith and Lucy did not install the door alarms and window alarms provided to them by the Agency. Thus, they failed to implement remedial measures given to them to help ensure the children's safety. The evidence also showed Keith's measures to keep the children from climbing on top of the house were ineffective and dangerous—including barricading the only working exit from the home, as well as using a spike-like plastic piece of material and what Keith described as "barbed wire" to keep the kids from climbing onto the roof. *See In re Meyer*, 98 Ohio App.3d 189, 196 (3d Dist. 1994) (affirming children were neglected where the parents "demonstrated poor child-care skills, as documented by their

inability to maintain their home in a clean and hazard-free manner, the constant filth of the children, and their inability to supervise the six children").

**{¶20}** Additionally, Keith failed to take S.K. to a psychological examination, even though he admitted S.K. was supposed to undergo such an examination after he killed a litter of kittens. There also was no evidence that Keith or Lucy had taken S.K. to therapy (or tried to schedule an appointment), as recommended by the Agency. *See In re T.C.*, 2018-Ohio-4369, ¶ 21, 23 (9th Dist.) (affirming child was neglected where evidence established that mother failed to ensure child received follow-up medical care to address physical pain and possible sexually-transmitted infection, as well as trauma-based counseling services to address mental health issues).

**{¶21}** We find that the trial court had sufficient evidence before it to satisfy the clear-and-convincing-evidence degree of proof that each of the three children was a neglected child due to "lack[ing] adequate parental care because of the faults or habits of the child's parents." R.C. 2151.03(A)(2).

**{¶22}** The first assignment of error is overruled.

### B.   Second Assignment of Error

**{¶23}** In the second assignment of error, Keith asserts that "the trial court did not have clear and convincing evidence before it to find that the Children were dependent." (Appellant's Brief at 13). He argues that he and Lucy "made efforts

to ensure the safe environment of the children, including by blocking access to the doors and to the roof access points." (*Id.*).

### 1. Applicable Law and Standard of Review

{¶24} Under R.C. 2151.04(C), a "dependent child" includes a child "whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." "In contrast to the analysis of whether a child is neglected, a determination of dependency focuses on the child's condition or environment, and not on the parent's fault." *In re O.M.*, 2023-Ohio-341, at ¶ 30 (3d Dist.); *see also In re Riddle*, 79 Ohio St.3d at 262-263. However, a court may consider a parent's conduct to the extent that it forms part of the child's environment. *In re O.M.*, 2023-Ohio-341, at ¶ 30 (3d Dist.); *see also In re Burrell*, 58 Ohio St.2d 37, 39 (1979) ("[a]s a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention," and such impact "must be specifically demonstrated in a clear and convincing manner"). Circumstances that produce a legitimate risk of harm may suffice to support a dependency adjudication under R.C. 2151.04(C). *In re O.M.*, 2023-Ohio-341, at ¶ 30 (3d Dist.); *In re L.H.*, 2020-Ohio-718, ¶ 32 (3d Dist.). The law does not require a court to experiment with a child's welfare to see if the child will suffer great detriment or harm before intervening. *In re B.B.*, 2012-Ohio-2695, ¶ 28 (3d Dist.); *see also In re L.H.*, 2019-Ohio-2383, ¶ 41

(12th Dist.) ("Generally, R.C. 2151.04(C) is to be broadly applied to protect the health, safety, and welfare of children").

**{¶25}** "A trial court's determination that a child is dependent under R.C. 2151.04 must be supported by clear and convincing evidence." *In re L.H.*, 2020-Ohio-718, at ¶ 30 (3d Dist.); *see also* R.C. 2151.35(A)(1). We explained what clear-and-convincing-evidence requires in our discussion above concerning the first assignment of error. As also set forth above, when this Court reviews a trial court's adjudication of a child as dependent, we must determine whether the trier of fact had sufficient evidence before it to satisfy the clear-and-convincing-evidence degree of proof. *In re O.M.*, 2023-Ohio-341, at ¶ 32 (3d Dist.).

### 2. Analysis

**{¶26}** After reviewing the evidence before the trial court, we find that the Agency presented sufficient evidence to support the allegation of dependency. Among other things, the evidence showed Lucy was generally unable to control and adequately supervise the children, yet she was left alone with them for extended periods of time; the children—who are young—were able to routinely climb onto the home's roof and run onto the road; the parents failed to implement remedial safety measures provided by the Agency; and Keith implemented some measures to keep the children from climbing onto the roof that actually increased the potential dangers of their environment. These circumstances produced a legitimate risk of

harm to the children. The environment subjected them to ongoing threats to their safety and welfare.

**{¶27}** Therefore, we find that the trial court had sufficient evidence before it to satisfy the clear-and-convincing-evidence degree of proof that each of the three children was a dependent child because they were in a "condition or environment" that "warrant[ed] the state, in the interests of the child," to assume the child's guardianship. R.C. 2151.04(C). Given that the Agency has only taken temporary custody of the children, Keith still has the opportunity to demonstrate that he can properly care for the children in accordance with the case plan's goal and be reunited with them. *See In re B.B.*, 2012-Ohio-2695, at ¶ 42 (3d Dist.).

**{¶28}** The second assignment of error is overruled.

## IV. CONCLUSION

**{¶29}** For the foregoing reasons, Appellant's assignments of error are overruled. Having found no error prejudicial to the appellant in the particulars assigned and argued, we affirm the judgments of the Defiance County Court of Common Pleas, Juvenile Division.

*Judgments Affirmed.*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlm**