OPINION
{¶ 1} Plaintiff-appellant, Becker Equipment, Inc. ("Becker"), appeals from the Butler County Common Pleas Court's decision denying its post-judgment motion for punitive damages and attorney fees against defendants-appellees, Marvin A. Flynn and Flynn's company, for misappropriation of trade secrets.
 {¶ 2} Becker is engaged in the business of distributing metering pumps, parts, and accessories. From 1979 to June 2001, Becker was the "Master Distributor" for Liquid Metronics, Inc. ("LMI"), a metering pump manufacturer. Pursuant to its "Master Distribution Agreement" with LMI, Becker had the exclusive right to purchase, promote, and resell LMI products in designated parts of Ohio, Indiana, Kentucky, West Virginia and Pennsylvania. In 1987, Becker hired Flynn, who eventually became the company's general manager. Flynn became LMI's primary "contact person" at Becker, establishing relationships with that company's personnel.
 {¶ 3} On November 29, 2000, Becker discharged Flynn for sexual harassment. On December 12, 2000, Flynn, who never signed a non-competition or confidentiality agreement with Becker, met with one of LMI's managers to discuss the prospect of Flynn's replacing Becker as LMI's Master Distributor in Becker's five-state sales region. Flynn subsequently established his own company — Flynn Metering Systems ("FMS") — to distribute metering pumps. On March 12, 2001, LMI provided Becker with 90-days written notice that it was terminating their Master Distribution Agreement, effective June 10, 2001. Also on March 12, 2001, Flynn sent a letter to approximately 150 of Becker's customers, which stated, "Flynn Metering Systems, operated by Mr. Marvin Flynn, is now your LMI Master Distributor. Becker Equipment, Inc. was the former LMI Master Distributor in this five-state region." (Emphasis sic.) From March 12, 2001 to June 10, 2001 — a period in which Becker was still, contractually, LMI's exclusive distributor — Flynn, acting through FMS, sold more than $290,000 worth of LMI product.
 {¶ 4} On March 23, 2001, Becker filed a complaint against Flynn and FMS (hereinafter, "appellees"), raising claims for (1) business defamation, arising from Flynn's March 12, 2001 letter to some of Becker's customers; (2) misappropriation of trade secrets, arising from allegations that Flynn improperly used Becker's customer information, including a copy of its customer list; and (3) tortious interference with a contractual or business relationship, namely, the Master Distribution Agreement between LMI and Becker and Becker's relationship with its established customers. Becker sought an award of compensatory and punitive damages and attorney fees against appellees.[1]
Appellees answered Becker's complaint and filed counterclaims for (1) business defamation, arising from Becker's calling Flynn a "sexual harasser"; and (2) tortious interference with a contract, namely, appellees' contract with LMI.
 {¶ 5} A seven-day trial was held on the parties' claims and counterclaims. At the close of Becker's case, appellees requested and received a directed verdict in their favor on the issue of punitive damages. The trial court subsequently directed a verdict against appellees on their counterclaims against Becker. Becker's remaining claims were submitted to the jury.
 {¶ 6} The jury returned a verdict in favor of Becker on all three of its remaining claims, awarding it $196,500 for business defamation, $82,795 for tortious interference, and one dollar for misappropriation of trade secrets, for a total judgment of $279,296. On March 1, 2002, the trial court issued a final appealable order and judgment entry consistent with the jury's findings, which incorporated its prior decisions directing verdicts in appellees' favor on the issue of punitive damages and in Becker's favor on appellees' counterclaims. Becker never filed an appeal from the March 1, 2002 judgment entry.
 {¶ 7} On March 29, 2002, Becker filed a motion requesting an award of punitive damages and attorney fees pursuant to R.C.1333.63(B) and 1333.64(C) of the Uniform Trade Secrets Act ("UTSA"), which is codified in R.C. 1333.61 et seq. On November 22, 2002, the trial court issued a decision and entry denying Becker's motion. In support of its decision, the trial court stated that while Becker presented "[s]ome evidence" that a copy of its customer list was seen in FMS's sales office, and that such a list can qualify as a trade secret subject to protection under the UTSA, it was not "firmly convinced that this occurred." The trial court further concluded that the jury found that Becker had sustained "little or no damage" as a result of appellees' alleged misappropriation of its trade secrets, since it awarded Becker only one dollar on that claim. Finally, the trial court observed that while the jury found that appellees had acted with malice when it found for Becker on its business defamation claim, that finding of malice is different from the finding of actual malice that it had to make in order to award Becker punitive damages or attorney fees pursuant to R.C. 1333.63(B) or1333.64(C). The trial court concluded that Becker's proof of actual malice was insufficient to award it either punitive damages or attorney fees in this case.
 {¶ 8} Becker appeals from the trial court's denial of his motion for punitive damages and attorney fees, raising the following assignment of error:
 {¶ 9} "The Trial Court erred in denying plaintiff's motion for punitive damages and attorney fees."
 {¶ 10} Becker argues that the trial court erred in denying its motion for an award of punitive damages and attorney fees pursuant to R.C. 1333.63(B) and 1333.64(C), because the evidence clearly proved that appellees willfully and maliciously misappropriated its trade secrets.
 {¶ 11} R.C. 1333.63(A) allows a party to recover damages for the misappropriation of its trade secrets. R.C. 1333.63(B) provides that if "willful and malicious misappropriation exists, the court may award punitive or exemplary damages in an amount not exceeding three times any award made under division (A) of this section." (Emphasis added.) R.C. 1333.64 provides, in relevant part, that "[t]he court may award reasonable attorney's fees to the prevailing party, if * * * (C) [w]illful and malicious misappropriation exists." (Emphasis added.) In light of the "may award" language used in R.C. 1333.63(B) and1333.64(C), the decision whether to award punitive damages or attorney fees under those provisions rests within the trial court's discretion, and its decision will not be reversed on appeal absent an abuse thereof. The term, "abuse of discretion" connotes more than an error in law or judgment; it implies that the trial court acted in an unreasonable, arbitrary or unconscionable manner. Miami Univ. v. Ohio Civ. Rights Comm.
(1999), 133 Ohio App.3d 28, 37. When applying the abuse of discretion standard, this court will affirm the trial court's judgment so long as there is a reasonable basis for it. Id. We will not substitute our judgment for that of the trial court.Smith v. Ohio Dept. of Human Services (1996),115 Ohio App.3d 755, 759.
 {¶ 12} In this case, the trial court's decision to deny Becker's motion for punitive damages and attorney fees under R.C.1333.63(B) and 1333.64(C) was not unreasonable, arbitrary, or unconscionable. First, the jury awarded only nominal damages (one dollar) to Becker for appellees' alleged misappropriation of its trade secrets, thereby evincing a belief that Becker sustained little or no damage as a result of the alleged misconduct. In fact, appellees presented evidence showing that the customer information that they had allegedly misappropriated was readily available to them from several public resources such as telephone directories, trade journals, and the Internet.
 {¶ 13} Becker suggests that appellees saved time by misappropriating its customer lists and discount schedules. However, the evidence demonstrated that Flynn worked for Becker for almost 13 years, and, therefore, was already familiar with the customer information he was alleged to have misappropriated.
 {¶ 14} Becker also argues that the jury's decision to award it only one dollar on its misappropriation claim stemmed from the fact that it had already awarded Becker all of its lost profits pursuant to its finding for it on its business defamation and tortious interference claims. However, this assertion is mere speculation. The best explanation for the jury's decision to award Becker only nominal damages on its misappropriation of trade secrets claim remains that the jury concluded that Becker had sustained little or no damage as a result of appellees' alleged acts of misappropriation.
 {¶ 15} Becker further argues that its "tortious interference claim relied on the use of misappropriated trade secrets as evidence of improper interference with [its] customer relations, and thus the misappropriation of trade secrets was a necessary component of the tortious interference claim." However, this assertion is inaccurate and misleading. The torts of interference with business relationships and contract rights generally occur when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." A B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. Constr. Trades Council, 73 Ohio St.3d 1, 14, 1995-Ohio-66. The plaintiff must show that the defendant has "intentionally and improperly" interfered with its contractual or business relations with another in order to prevail on its claim. Dryden v.Cincinnati Bell Tel. Co. (1999), 135 Ohio App.3d 394, 400. Whether the interference is improper or privileged depends upon several factors, including, the parties' conduct and interests, and their relationship. Id. The trial court properly instructed the jury that it could consider several factors in determining whether appellees acted improperly, including whether they had misappropriated trade secrets or engaged in business defamation. It is not clear what factor or factors the jury based its finding of improper conduct, but this does not matter. R.C. 1333.63(B) and 1333.64(C) do not authorize a court to award punitive damages and attorney fees to the prevailing party for tortious interference with a contract or business relationship.
 {¶ 16} There was also sufficient evidence to support the trial court's determination that Becker failed to provide sufficient proof that "willful and malicious appropriation" existed in this case. Although R.C. 1333.63(B) and 1333.64(C) do not define the phrase, "willful and malicious," the trial court and both parties interpreted it as meaning, "actual malice." We believe that this is correct, given the common and ordinary meaning of those words. "Willful" means "[v]oluntary and intentional, but not necessarily malicious[.]" Blacks Law Dictionary (7th Ed. 1999) 1593. "Malicious" is the adjective for "malice," which is defined as "[t]he intent, without justification or excuse, to commit a wrongful act[;]" "[r]eckless disregard of the law or of a person's legal rights[;]" "[I]ll will; wickedness of heart." Id. at 968. The combined definitions of "willful" and "malicious" are, in turn, similar to the definition of "actual malice" used for purposes of determining the appropriateness of a punitive damages award at common law, i.e., "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or
(2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis sic.) Calmes v. Goodyear Tire Rubber Co.
(1991), 61 Ohio St.3d 470, 473, quoting Preston v. Murty
(1987), 32 Ohio St.3d 334, syllabus.
 {¶ 17} Becker asserts that the evidence established that Flynn acted with hatred, ill will or a spirit of revenge towards it because he wanted revenge for Becker having discharged him for sexual harassment. However, Flynn testified at trial that he accepted responsibility for the incident, and apologized to Becker's female employees for his actions. Obviously, the trial court was in the best position to determine his sincerity on this issue. There was also evidence presented that Flynn did not act with a conscious disregard for Becker's rights, since the evidence showed that Flynn never signed a confidentiality or noncompete agreement with Becker and that Flynn sent out the March 12, 2001 letter only after being advised to do so by LMI's personnel.
 {¶ 18} Furthermore, R.C. 1333.63(B) and 1333.64(C) do not mandate that a court award punitive damages or attorney fees if willful and malicious conduct exists; instead, those provisions merely provide a court with discretionary authority to award such damages or fees if it believes they are called for. Here, there was ample reason for the trial court to refuse to award Becker punitive damages or attorney fees for misappropriation of trade secrets, including the fact that the jury awarded Becker only one dollar for appellees' alleged misappropriation of trade secrets and the fact that Flynn never signed a confidentiality or noncompetition agreement with Becker.
 {¶ 19} In light of all the evidence and circumstances present, we conclude that the trial court had a reasonable basis for its decision to overrule Becker's motion for punitive damages and attorney fees for misappropriation of trade secrets.
 {¶ 20} Becker's sole assignment of error is overruled.
 {¶ 21} The trial court's judgment is affirmed.
Valen, P.J., and Powell, J., concur.
[1] At the time it filed its original complaint, Becker also sought and received a temporary restraining order against appellees. However, after holding an extensive hearing on the matter, the trial court subsequently denied Becker's motion for a temporary injunction against appellees.