[Cite as *Boehm v. Black Diamond Casino Events, LLC*, 2018-Ohio-2379.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

ROGER BOEHM, JR.,                    :        APPEAL NO. C-170339
                                              TRIAL NO. A-1406309
    Plaintiff/Third-Party            :
    Defendant-Appellee,                           *O P I N I O N.*
                                     :

  vs.                                :

BLACK DIAMOND CASINO EVENTS,         :
LLC,
                                     :
    Intervenor/Third-Party
    Plaintiff-Appellant.             :


Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 20, 2018


*Eugene R. Butler*, for Plaintiff/Third-Party Defendant-Appellee,

*Edward J. Collins* and *Zachary D. Bahorik*, for Intervenor/Third-Party Plaintiff-Appellant.

**MILLER, Judge.**

{¶1}    Intervenor/third-party plaintiff-appellant Black Diamond Casino Events, LLC ("Black Diamond") appeals the decision of the trial court to grant plaintiff/third-party defendant-appellee Roger Boehm, Jr.'s ("Boehm") motion for involuntary dismissal under Civ.R. 41(B)(2). For the following reasons, we affirm.

## Facts and Procedural History

{¶2}    Black Diamond operates a casino-games-themed events business for corporate and private parties. Roger Boehm, Jr., a former employee of Black Diamond, approached the owners about buying two of the four members' interests in Black Diamond. In connection with his due diligence, Boehm signed a nondisclosure agreement to review Black Diamond's business records. Boehm obtained Black Diamond customer information, tax returns, financial statements, and vendor information. Boehm elected to move forward on the purchase of the two members' interests, but the members refused to sell. Boehm commenced this action, alleging that the members breached an oral agreement to sell him their membership interests. Black Diamond intervened, asserting counterclaims for breach of contract and violations of the Ohio Uniform Trade Secrets Act. Boehm ultimately dismissed his complaint. Black Diamond moved for partial summary judgment on its breach-of-contract claim, which was granted. The trial court held a bench trial on the trade-secrets claim and rendered an oral judgment of dismissal under Civ.R. 41(B)(2) finding in favor of Boehm at the conclusion of Black Diamond's case.

## Analysis

{¶3}    The dismissal of a plaintiff's case under Civ.R. 41(B)(2) during a bench trial allows the trial court to weigh the evidence, resolve any conflicts therein, and render judgment for the defendant at the close of the plaintiff's case if the plaintiff

has shown no right to relief. *Bank One, Dayton, N.A. v. Doughman*, 59 Ohio App.3d 60, 63, 571 N.E.2d 442 (1st Dist.1988). On appeal, the dismissal will be set aside only if erroneous as a matter of law or against the manifest weight of the evidence. *Id.*

### Black Diamond's Client List and Financial Data are Trade Secrets

{¶4} Black Diamond presents three assignments of error for review. In its first assignment of error, Black Diamond contends that the trial court erred as a matter of law in finding that no trade secrets existed. A trade secret is defined as

> information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:
>
> (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D). The following factors should be considered when analyzing a trade-secrets claim:

> (1) The extent to which the information is known outside the business;
>
> (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret

3

to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. The Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588 (8th Dist.1983).

{¶5} Here, Black Diamond claims that its client list, tax returns, and quarterly profit and loss statements are trade secrets under the Ohio Revised Code. "An entity claiming trade secret status bears the burden to identify and demonstrate that the material is included in categories of protected information under the statute and additionally must take some active steps to maintain its secrecy." *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 732 N.E.2d 373 (2000).

{¶6} Testimony established that Black Diamond's client list, which the parties also referred to as an event bid calendar, was not known to the public or those outside of the business. "A customer list is an intangible asset that is presumptively a trade secret when the owner of the list takes measures to prevent its disclosure in the ordinary course of business to persons other than those selected by the owner." *State ex rel. Lucas Cty. Bd. of Commrs. v. Ohio Environmental Protection Agency*, 88 Ohio St.3d 166, 724 N.E.2d 411 (2000). The client list was primarily on a password-protected computer, though some information pertaining to clients was occasionally posted on clipboards inside the business's warehouse that employees could see in order to prepare for that client's event. Evidence established that the complete client list was not accessible to nonemployees unless a nondisclosure agreement was signed. Repeat

4

clients made up approximately 25 to 30 percent of Black Diamond's clientele. Testimony established that at one time a former member of Black Diamond opened up a competing business and Black Diamond lost approximately 25 to 30 percent of its business revenue, in part, through the loss of clients. Black Diamond obtained a judgment against the former member for a misappropriation of trade secrets, including the client list.

{¶7} With respect to the tax returns and quarterly profit-and-loss statements, evidence established that this financial information was not known to the public or those outside the business. The financial information was also not generally accessible by employees of Black Diamond, except for those employees who helped create it. The financial information was primarily on a password-protected computer, and the financial records were not available to anyone unless a nondisclosure agreement was signed. Testimony established that the judgment against the former member of Black Diamond was also based on the loss of the financial information. Accordingly, we find that Black Diamond's client list, tax returns, and quarterly profit-and-loss statements are trade secrets under the Ohio Revised Code. We sustain Black Diamond's first assignment of error.

## Damages Are Not Necessary To Establish Misappropriation

{¶8} In its second assignment of error, Black Diamond claims that the trial court erred as a matter of law in requiring proof of damages for a claim of misappropriation of trade secrets. Under R.C. 1333.61, "misappropriation" means any of the following:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

(2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

(a) Used improper means to acquire knowledge of the trade secret;

(b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

(c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Misappropriation of trade secrets is a recognized tort in Ohio for which damages may be obtained. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999), citing *Wiebold Studio, Inc. v. Old World Restorations, Inc.*, 19 Ohio App.3d 246, 484 N.E.2d 280 (1st Dist.1985); *see* R.C. 1333.63. But, as evident from the text of the statute, proof of damages is not an element for a valid claim of misappropriation. Therefore, we sustain Black Diamond's second assignment of error.

### Misappropriations Occurred, but the Trial Court Was Correct Not To Afford Additional Relief beyond the Return of the Trade Secrets

{¶9}     In its third assignment of error, Black Diamond claims that the trial court erred in finding that no misappropriation of trade secrets occurred, as that

6

finding was contrary to the manifest weight of the evidence. Black Diamond argues that misappropriations occurred when Boehm refused to return some of Black Diamond's records for over a year and again when Boehm shared confidential information covered under the nondisclosure agreement with an employee of Black Diamond, Drew Winter, and with his accountant, Ronald Evans.

{¶10} In the first instance, Boehm retained the records to prepare for litigation and later returned them, after being ordered to do so by the trial court. It is undisputed that Boehm initially acquired the records properly as part of his due diligence and pursuant to his nondisclosure agreement with Black Diamond. Black Diamond claims that retaining the records, however, violated a clause in the nondisclosure agreement regarding the return of confidential information, and was therefore an improper use of a trade secret. The "use of trade secrets of another without the express or implied consent of the other person by a person who * * * [u]sed improper means to acquire knowledge of the trade secret" is a misappropriation. "Improper means" includes * * * breach * * * of a duty to maintain secrecy * * *. R.C. 1333.61(A). Boehm breached his duty to maintain secrecy of the records by retaining them for himself beyond the period for which he had Black Diamond's consent. Boehm's retention of records that he had an obligation to return, even though he kept them to prepare for litigation, was a misappropriation under Ohio's Uniform Trade Secrets Act.

{¶11} In the second instance, Boehm denied sharing the records with Drew Winter. There is no evidence in the record that Boehm shared the records with Winter. Black Diamond only presented evidence that Boehm discussed an audit of the company by the Ohio Department of Job and Family Services, which Boehm argued was a public record. The trial court agreed with Boehm. There is no indication that the trial court so lost its way in weighing the evidence presented with regards to Winter as to cause a

manifest miscarriage of justice warranting a reversal. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶12} Boehm admitted to sharing the records with his accountant as part of his due diligence and claimed his accountant did not retain a copy of the documents. This was permitted so long as Boehm had his accountant also sign a nondisclosure agreement. This was a technical misappropriation under Ohio's Uniform Trade Secrets Act. Boehm shared records that he was under obligation to keep secret without obtaining an executed nondisclosure agreement. Accordingly, we sustain Black Diamond's third assignment of error in part.

{¶13} While we have sustained Black Diamond's three assignments of error, Black Diamond has still not demonstrated a right to relief warranting a reversal of the trial court's judgment. The trial court found that Black Diamond was no longer entitled to injunctive relief under R.C. 1333.62, because Boehm had already returned the financial records during the litigation, and there was no other action to enjoin. The trial court found that Black Diamond was not entitled to damages under R.C. 1333.63, because there was no evidence put forth demonstrating actual loss or unjust enrichment from Boehm sharing the records with his accountant, and insufficient evidence put forth to award a reasonable royalty. Nor was there a liquidated-damages clause upon which Black Diamond could rely. Our review fails to persuade us that the factfinder clearly lost its way and created such a manifest miscarriage of justice that we must reverse the judgment of the trial court and order a new trial. *See Thompkins* at 386-387.

{¶14} The trial court did not explicitly address whether Black Diamond was entitled to attorney fees under R.C. 1333.64, which Black Diamond argued it was

8

because Boehm's appropriation was willful. Under R.C. 1333.64, a court may award attorney fees to the prevailing party if the misappropriation is willful *and* malicious. Black Diamond did not argue before the trial court that Boehm's misappropriation was malicious. "Willful and malicious" has been interpreted as meaning "actual malice," given the common and ordinary meaning of the words. *Becker Equip., Inc. v. Flynn*, 12th Dist. Butler No. CA 2002-12-313, 2004-Ohio-1190, ¶ 16.

> "Willful" means voluntary and intentional, but not necessarily malicious. "Malicious" is the adjective for "malice," which is defined as the intent, without justification or excuse, to commit a wrongful act; reckless disregard of the law or of a person's legal rights; ill will; wickedness of heart. The combined definitions of "willful" and "malicious" are, in turn, similar to the definition of "actual malice" used for purposes of determining the appropriateness of a punitive damages award at common law * * *.

(Internal quotations omitted.) *Id.*

{¶15} Here, it is undisputed that Boehm allowed his accountant to view the financial records in order to assess the profitability of an investment with Black Diamond. Boehm protected the information to some extent by not allowing the accountant to keep the information. Black Diamond knew that Boehm shared the records, and merely wanted Boehm's accountant to sign a nondisclosure agreement. It was not against the manifest weight of the evidence for the trial court to conclude that Black Diamond did not prove Boehm's misappropriation was malicious or without just cause. Consequently, Black Diamond was not entitled to attorney fees. We, therefore, determine that the trial court's entry of judgment in favor of Boehm at the close of Black Diamond's case was proper under the standards set forth under Civ.R. 41(B)(2).

9

## Conclusion

{¶16} Although we sustain Black Diamond's first and second assignments of error in full and third assignment of error in part, we nonetheless affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.