[Cite as *In Re: The S Children*, 2018-Ohio-2961.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| IN RE: THE S CHILDREN | : | APPEAL NOS. C-170624 |
|  |  | C-170653 |
|  | : | TRIAL NO. F-16-2167z |
|  |  |  |
|  | : | *O P I N I O N.* |

Appeals From:  Hamilton County Juvenile Court

Judgment Appealed From Is:    Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  July 27, 2018

*Raymond T. Faller,* Hamilton County Public Defender, and *Klarysa Benge,* Assistant Public Defender*,* Guardian ad Litem for Appellants C.S. and N.S.,

*Kacy Eaves* for Appellants C.S. and N.S.,

*Kroener, Hale & Penick* and *Angela Penick* for Appellee Mother,

*Stagnaro, Hannigan, Koop* and *Chad G. Koop* for Appellee Father.

**MILLER, Judge.**

{¶1} This is an appeal from the juvenile court's dismissal—at the close of the state's case—of the Hamilton County Department of Job and Family Services' ("HCJFS") complaint seeking permanent custody of C.S. and N.S. We affirm that part of the trial court's judgment finding that the state failed to prove C.S. and N.S. were abused or neglected, reverse the holding that the dependency statute, R.C. 2151.04(C), did not apply, and remand for further proceedings consistent with this opinion.

{¶2} HCJFS removed N.S., C.S., and multiple other siblings from their parents' home after their brother, A.S., died from injuries allegedly inflicted at home while in the parents' care. A.S.'s death was ruled a homicide. HCJFS subsequently filed for permanent custody of all of the children, claiming that all were abused, neglected, and dependent. The matter proceeded to trial.

{¶3} In part, the state alleged that C.S. and N.S. were neglected under R.C. 2151.03(A)(2) because the parents, appellees herein, did not adequately provide for their complex and specialized medical needs. The parties stipulated to the admissibility of hundreds of pages of the children's medical records. On the first day of a four day trial, the court admonished the parties multiple times that, without expert testimony interpreting the medical records, the records could be used only for very limited purposes. The court specifically ruled that a lay witness was not qualified to give her opinion as to what treatment options the parents should have chosen for their children. The court also ruled that the witness was not competent to testify to the meaning of physician's notes in the records. Essentially, the court ruled that, without expert testimony, it would consider the medical records as showing the

children's health status, but that it would not use the records as evidence of abuse, neglect, or dependency without expert testimony creating that link.

{¶4} The state's complaint also alleged that the children were dependent under R.C. 2151.04(C) because of their home environment. The state presented evidence that mother had inflicted A.S.'s fatal injuries, and argued that mother's actions made the home unsafe for all the children.

{¶5} At the close of the state's case, parents moved for summary judgment. Because of the timing of the motion, the trial court appropriately recast the motion as a motion to dismiss.

{¶6} Regarding the neglect allegations, the court informed C.S. and N.S.'s guardian ad litem ("GAL") during arguments on the motion that it had not "had an opportunity to review every single page in those medical records," and asked the GAL to "point * * * to something that involves the parent's actions?" The GAL cited a number of exhibits that were admitted into evidence without expert testimony, and argued that these documents showed that the parents were not adequately meeting C.S.'s and N.S.'s medical needs.

{¶7} Regarding the dependency allegations, a significant portion of arguments focused on whether the state could proceed under R.C. 2151.04(C). The court ultimately indicated that R.C. 2151.04(D) should have been alleged instead. At the close of argument, the court announced from the bench that it was granting the parents' motion to dismiss as to C.S. and N.S.

{¶8} In its decision entering judgment, the court wrote that C.S.'s and N.S.'s "medical records are in evidence which show multiple special needs, but no evidence was introduced at any time of parents' inability or unwillingness to meet those needs." The court also indicated that the state had proceeded under the incorrect

dependency code section—namely, that the state should have alleged that the children were dependent under R.C. 2151.04(D) instead of R.C. 2151.04(C). In holding that the state had failed to prove its case, the court found, in part, that there was "absolutely no mention * * * of [C.S. and N.S.] in the context of * * * [A.S.'s] tragic death * * * ." The trial court's judgment did not dismiss the remaining siblings from the case, and did not include Civ.R. 54(B) certification. C.S., N.S., and the GAL appeal.

### Our Jurisdiction

{¶9}   This court has "such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * * ." Article IV, Section 3(B)(2), Ohio Constitution. In pertinent part, R.C. 2505.02(B)(2) provides that an order is a final order "that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is * * * (2) An order that affects a substantial right made in a special proceeding * * * ."

{¶10}  ***Substantial Right in a Special Proceeding.*** It is well-settled that a permanent custody action is a special proceeding. *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840*,* 873 N.E.2d 886, ¶ 43. In the context of R.C. 2505.02, a "substantial right" is "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A). In *In re C.B.*, the court held, "[b]ecause of the unique role the guardian ad litem has in a permanent-custody proceeding with respect to ensuring that the best interests of a child are considered * * * the guardian ad litem has a statutory right to ensure that the best interests of the child are enforced and protected in the permanent-custody proceeding." 129 Ohio St.3d 231,

4

2011-Ohio-2899, 951 N.E.2d 398, ¶ 14. The court held that this right was a "substantial right" under R.C. 2505.02(A)(1). *Id.* As for the children, C.S. and N.S. have a statutory right set forth in R.C. 2151.01(A) that they are entitled to enforce regarding who will raise them. *See In re Z.H.*, 1st Dist. Hamilton Nos. C-150301 and C-150305, 2015-Ohio-3209, ¶ 4 (recognizing R.C. 2151.01(A) creates a legal interest for children subject to R.C. Chapter 2151 to be cared for in a family environment, unless separation is necessary for the child's welfare). Thus, under R.C. 2505.02(A)(1), the children and the GAL have a substantial right implicated by the court's judgment.

{¶11} *Immediate Review is Necessary.* The fact that the GAL and the children have had substantial rights affected in a special proceeding does not end our analysis. The Ohio Supreme Court has recently made clear that yet another step, absent in the *C.B.* decision, is necessary to determine our jurisdiction under R.C. 2505.02(B)(2). In *Thomasson v. Thomasson*, the court held that "an order affects a substantial right for purposes of R.C. 2505.02(B)(2) only if 'in the absence of immediate review of the order [the appellant] will be denied effective relief in the future.' " *Thomasson v. Thomasson*, ____ Ohio St.3d ____, 2018-Ohio-2417, ____ N.E.3d ____, ¶ 10, quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993).

{¶12} Here, we hold that immediate review is necessary to ensure that, if the trial court indeed erred in returning the children to their parents, the children are protected from harm. The allegations in this case are that the mother inflicted fatal injuries to A.S. while both parents were in the home, by beating A.S.'s head on the ground. The infliction of death or injury on the children would obviously be

irreparable. The alleged possibility of such abuse affords C.S. and N.S. and the GAL the right to immediate review.

{¶13} *App.R. 4(B)(5) Applies.* C.S. and N.S.'s siblings have not been dismissed from the state's permanent custody complaint. We therefore must determine the effect of the fact that the judgment appealed from determines fewer than all the claims as to all the parties. App.R. 4(B)(5) specifically contemplates a situation, such as the one here, where there has been an order that affects a substantial right made in a special proceeding, but where there is no Civ.R. 54(B) certification. *See In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, ¶ 11. App.R. 4(B)(5) provides,

> *Partial Final Judgment or Order.* If an appeal is permitted from a judgment or order entered in a case in which the trial court has not disposed of all claims as to all parties, other than a judgment or order entered under Civ.R. 54(B), a party may file a notice of appeal within thirty days of entry of the judgment or order appealed or the judgment or order that disposes of the remaining claims. Division (A) of this rule applies to a judgment or order entered under Civ.R. 54(B).

{¶14} In this special proceeding, there are final judgments for two, but not all parties—making the judgment appealed from a partial judgment. And there is no Civ.R. 54(B) certification. Consequently, App.R. 4(B)(5) permitted the option of filing the GAL's and the children's appeal within 30 days of the trial court's partial final judgment, or awaiting the end of the case. We therefore turn to the merits of the GAL's and the children's appeals.

6

### Arguments on Appeal

{¶15}  On appeal, the GAL and children focus their arguments on whether the trial court erred when it found that the state had failed to prove neglect under R.C. 2151.03(A)(2), and whether the trial court properly determined that the state had proceeded under the incorrect dependency code section.  To this end, the GAL raises two assignments of error, (1) that the trial court erred as a matter of law in finding that R.C. 2151.04(C) did not apply and in applying the wrong standard of proof to the parent's motion, and (2) that the trial court erred by dismissing the complaint because the state produced clear and convincing evidence that the children were neglected and dependent.  The children raise one assignment of error—that the trial court's judgment was against the manifest weight of the evidence and was an abuse of discretion.

### Juv.R. 45, Civ.R. 41, and Our Standard of Review

{¶16}  The juvenile rules do not provide for a dispositive motion at the close of the state's case.  However, Juv.R. 45(B) provides, "If no procedure is specifically prescribed by these rules or local rule, the court shall proceed in any lawful manner not inconsistent with these rules or local rule."  Thus, the trial court acted within its discretion when it treated the parents' motion as a motion to dismiss. To determine our standard of review, we must first determine what the trial court's ruling was most akin to under the juvenile, criminal or civil rules of procedure.

{¶17} Although their assignment of error states otherwise, the children assert that the court decided the motion to dismiss under Juv.R. 29(F), and that it reviewed the state's case for sufficiency—as should we.  The parents claim that the court decided the motion under "Rule 29," and that we should therefore review for sufficiency. It appears the parents refer to Crim.R. 29(A).  Juv.R. 29(F) states, "Upon

7

the determination of the issues, the court shall do one of the following: (1) If the allegations of the complaint, indictment, or information were not proven, dismiss the complaint." Unlike the criminal and civil rules of procedure, however, this rule does not provide a mechanism allowing a party to move to dismiss a complaint at the close of an opponent's case. *Compare* Crim.R. 29(A) and Civ.R. 41(B)(2) (allowing defendant to move the court for a dismissal at the close of the state's or plaintiff's case, respectively). Juv.R. 29(F), entitled "Procedure Upon Determination of the Issues," simply lists the actions the trial court must, or in some instances may, take when ruling on a case.

{¶18} The children also contend that the court's judgment was against the weight of the evidence, but do not cite a specific standard. The GAL asserts that the trial court erroneously failed to weigh the evidence presented, and that the court was required to determine if the state had clearly and convincingly proven its case. Presumably, the GAL and children argue that the court should have proceeded as if the parents' motion was brought under Civ.R. 41(B)(2), which allows the court to weigh the evidence presented at the close of a plaintiff's case.

{¶19} We note that the GAL, the parents, and the children, in part, argue standards inconsistent with their desired outcome. Parents argue that the trial court reviewed for sufficiency, and urge us to do the same. Sufficiency is a test for adequacy, and asks if evidence exists on each element. *Eastley v. Volkmann,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11. In contrast, the GAL and the children assert that the state had to satisfy the burden of persuasion on each element

8

to survive the motion to dismiss, which in this case was a clear and convincing standard.[1] *See id.* at ¶ 12, 19; Juv.R. 29(E)(4).

{¶20} There were different evidentiary standards elucidated by the parties as they argued the motion to the juvenile court—at times the parties appeared to be arguing sufficiency as in a Crim.R. 29(A) motion, and at other times the court's comments showed that it was weighing the evidence presented. Immediately before ruling on the motion, the court stated that it was going "to determine whether or not the state has *met its burden* of producing sufficient evidence to *clearly and convincingly establish* that these children * * * are in fact either abused, neglected, or dependent." (Emphasis added.) And while the trial court entry's states that the court applied a "prima facie" standard of proof, the entry later provides that the court found "virtually no evidence," as opposed to "no evidence" of neglect, abuse, or dependency, indicating that the court had weighed the evidence.

{¶21} Because it was appropriate for the court to weigh the evidence presented, instead of merely reviewing for sufficiency, and because custody actions are civil in nature, we treat the trial court's judgment as one akin to a ruling on a Civ.R. 41(B)(2) motion to dismiss. That rule provides in part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment

---

[1] One would expect the parties to have opposite arguments since establishing sufficiency is a much lower threshold than proving a case by clear and convincing evidence.

against the plaintiff or may decline to render any judgment until the close of all the evidence * * *.

{¶22} We cannot set aside the court's judgment under Civ.R. 41(B)(2) unless it is erroneous as a matter of law or is against the manifest weight of the evidence. *Boehm v. Black Diamond Casino Events, LLC*, 1st Dist. Hamilton No. C-170339, 2018-Ohio-2379, ¶ 3. Having established our standard of review, we address the merits of this appeal.

### Trial Court's Review of the Medical Records

{¶23} As an initial matter, the GAL and the children argue that the trial court erred in holding that there was not clear and convincing evidence of neglect or dependency without first reviewing all of the medical records submitted into evidence. They point to the following exchange during arguments on the parent's motion as displaying reversible error:

> THE COURT: In those medical records – and it's clear that I haven't had an opportunity to review every single page in those medical records, but what has been brought to light in evidence. In those medical records standing alone as to * * * [C.S. and N.S.], can you point me to something that involves the parent's actions? There's no question every one of these children could produce reams of medical records.
>
> MS. BENGE [GAL]: I think if you look at the growth charts, there are weight issues with * * * [C.S. and N.S.] * * *. I think if you look at the narratives in the doctors' appointments, it's there.

{¶24} We have found reversible error in a trial court's failure to consider all exhibits before ruling. *See Higgins v. Buehrer*, 1st Dist. Hamilton No. C-160288,

10

2016-Ohio-7214.  This case is different.  The court's statement was that it had not yet examined "every single page in the medical records."  This does not mean that the court had not looked at the documents at all.  It could simply mean that it had not independently dissected them.  Moreover, we do not accept the argument that it is the trial court's duty to root through the records to unearth evidence favorable to a party.  We utilize an adversarial court system, not an inquisitional one.  Unlike in *Higgins*, the court here did not clearly fail to review exhibits prior to ruling.  We find no error.

### Neglect and Manifest Weight of the Evidence

{¶25}  The GAL claims that the trial court's judgment that the state failed to prove "neglect" as alleged under R.C. 2151.03(A)(2) was against the manifest weight of the evidence.  It was not.

{¶26}  R.C. 2151.03(A)(2) states that a child is neglected if he or she "lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian."  In pertinent part, "adequate parental care" is "the provision by a child's parent * * * of specialized services warranted by the child's physical or mental needs."  R.C. 2151.011(B)(1).

{¶27}  The GAL argues that medical records made by a Dr. Galloway show C.S. was neglected.  The records state that C.S.'s nutritional status was "poor" and that an unrepaired heart defect she suffered would likely require additional calories "above baseline for age." Dr. Galloway's notes stated that "ideally patient needs supplemental tube feeds but given mom's resistance in her other children in the past, this may not be feasible."  Another doctor's notes, Dr. Kocoshis, provide that "we made a case" for tube feeding C.S. as an inpatient, but that "mother does not want her admitted and will try to re-nourish by mouth."

11

{¶28} In regard to N.S., the GAL references medical records showing the parents declined a developmental evaluation for him in February 2016, and that mother declined vaccinations in September 2016. In October 2016, medical records indicate that N.S. was diagnosed with failure to thrive, was admitted to the hospital and prescribed a high calorie supplement because he had not gained weight since June.

{¶29} The GAL argues, without the benefit of expert testimony, that these records clearly and convincingly proved that the children "were not receiving the nutrition or the developmental assessments they required to thrive." The trial court saw it differently. During trial, the parties were warned by the court several times that, without expert testimony, the children's medical records could be used only for limited purposes. The court also specifically ruled that a lay witness was not competent to explain the parents' treatment options, or interpret physician's notes. Despite this, neither the GAL, the children, nor the state called a witness competent to testify concerning how the information in these records demonstrated that the parents' treatment choices constituted a lack of adequate parental care of C.S. and N.S.

{¶30} In affording little weight to these records pertaining to the state's neglect allegation, the trial court did not so lose its way as to create a manifest miscarriage of justice warranting a reversal. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus ("On the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.").

**{¶31}** We therefore affirm that portion of the trial court's judgment determining that the state had failed to prove by clear and convincing evidence that C.S. and N.S. were neglected children.

### Dependency, R.C. 2151.04(C) and (D), and an Error of Law

**{¶32}** The state alleged that C.S. and N.S. were dependent under R.C. 2151.04(C). The children and the GAL claim that the court erroneously concluded that R.C. 2151.04(C) did not apply. They are correct.

**{¶33}** R.C. 2151.04(C) states that a child is dependent if that child's "condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship." The state presented evidence that mother inflicted injuries leading to A.S.'s death, which was ruled a homicide, and that it occurred in the children's home. The state contended that these facts established that C.S. and N.S. were dependent under subsection (C). The court found that living in a house where deadly abuse of a sibling had allegedly occurred—without more—was insufficient as a matter of law to prove dependency under R.C. 2151.04(C). The court indicated that the state should have proceeded under R.C. 2151.04(D), which provides that a dependent child is one

> To whom both of the following apply:
>
> (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
>
> (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in

13

the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household.

{¶34} We hold that the trial court erred as a matter of law in finding the state's dependency claim failed because subsection (D), and not subsection (C), applied. Aside from the fact that these provisions are not mutually exclusive, the plain language of subsection (D)(1) indicates that a prior adjudication is necessary for a dependency adjudication. *See In re N.J.*, 12th Dist. Warren Nos. CA2016-10-086, CA2016-10-090 and CA2016-10-091, 2017-Ohio-7466 (analyzing the plain language of R.C. 2151.04(D) and concluding that a prior adjudication is needed). There was no prior adjudication in this case.

{¶35} We note that the parents contend that the trial court applied subsection (C), and came to the proper conclusion. This is inaccurate. In arguments leading up to the trial court's ruling, the court expressed multiple times that it found the facts of the case did not fit within subsection (C), and that subsection (D) should have been alleged by the state. The court wrote in its entry that it had given the state the opportunity to amend the allegations in its complaint, but the state had declined to do so. The court also wrote that it was "critical to note that subsection (D)(1) and (2) was [sic] NOT alleged in the complaint."

{¶36} It is evident from the record that the trial court misunderstood subsection (C) as requiring evidence of direct harm, and not mere presence in a home where abuse had occurred. But circumstances giving rise to a legitimate risk of harm may suffice to support a dependency adjudication under R.C. 2151.04(C). *See, e.g., In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1259, 06AP-1263, 06AP-1264 and 06AP-1265, 2007-Ohio-4308, ¶ 62

14

(children who were not the victims of sexual abuse deemed dependent where sibling had been sexually abused by father); *In re Savchuk Children*, 180 Ohio App.3d 349, 2008-Ohio-6877, 905 N.E.2d 666 (11th Dist.) (infant's multiple and severe injuries that parents could not explain were sufficient to support a dependency finding as to unharmed siblings under R.C. 2151.04(C)); *In re A.P.*, 12th Dist. Butler No. CA2005-10-425, 2006-Ohio-2717 (dependency adjudication upheld where father had stabbed his live-in fiancée while A.P. was asleep in the other room, and where a 14-year-old had been left in charge for several hours after the stabbing). We conclude that the evidence adduced at trial, specifically that A.S.'s death was a homicide resulting from injuries inflicted by mother, if believed by the court, could support a dependency adjudication under R.C. 2151.04(C). An adult who killed one child by blunt force trauma to the head may kill or injure another child.

### Conclusion

{¶37} The parties' assignments of error are sustained to the extent they argue that the trial court erred in failing to apply R.C. 2151.04(C), and that the case therefore must be remanded to the trial court. In all other respects, the parties' assignments of error are overruled.

{¶38} Thus, we affirm the potion of the trial court's judgment determining that the state failed to prove by clear and convincing evidence that C.S. and N.S. were neglected. We reverse the trial court's holding that R.C. 2151.04(C) did not apply. We remand with instructions to the trial court either to rule on the motion to dismiss under R.C. 2151.04(C) or to take the motion under submission pending the completion of the trial, and for further proceedings consistent with this opinion.

Judgment accordingly.

**CUNNINGHAM, P.J.,** and **MYERS, J.,** concur

Please note:

The court has recorded its own entry on the date of the release of this opinion.

