[Cite as *In re E.N.*, 2018-Ohio-3919.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE: E.N.

:      APPEAL NO. C-170272
         TRIAL NO. F14-639

:

:      *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed from is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: September 28, 2018

*Kroener, Hale & Penick* and *Angela M. Penick,* for Appellee Father,

*Stephanie Lape Wolfinbarger, PLLC,* and *Stephanie Lape Wolfinbarger,* for Appellant Mother.

**CUNNINGHAM, Presiding Judge.**

{¶1}   Appellant mother challenges the judgment of the Hamilton County Juvenile Court adopting the magistrate's decision awarding legal custody of her minor child, E.N., to the child's father.

## I.  Facts and Procedure

{¶2}   E.N. was born in late 2009.  While her parents were never married, they lived together at the time of their daughter's birth, and raised E.N. for the next four years.  Mother was the primary caregiver for E.N.  Father was the principal earner for the family.  Mother complained of father's controlling behavior and his lack of insight into her anxiety issues. She began to spend weekends away from their home.  Mother and father engaged in couples counseling.  Nonetheless, at Christmas 2013, mother left their home taking E.N. with her.

{¶3}   In January 2014, mother moved with E.N. to Nashville, Indiana, where they lived with mother's new boyfriend for three months.  Mother became pregnant with his child and ultimately bore a son.  The relationship quickly ended.  The ex-boyfriend testified that mother drank and used marijuana while they were together.

{¶4}   In March 2014, father filed a petition in juvenile court seeking sole custody of E.N.  The matter was referred to a magistrate.  During an extensive pretrial period, E.N.'s guardian ad litem ("GAL") filed an initial report, in December 2014, recommending that "at this time" E.N. remain in mother's custody.  The GAL found father controlling and emotionally abusive, and recommended that he engage in individual counseling.  Father followed the GAL's counseling recommendation.

{¶5}   Dr. Michael Nelson, a clinical psychologist, performed custody evaluations on both parents and interviewed E.N.  In his June 2015 report, Dr. Nelson recommended that mother retain custody of E.N., though he noted that E.N.

2

wished to spend equal time with her parents. Dr. Nelson also "strongly recommended" that mother continue her individual counseling sessions with her therapist, and "strongly recommended" that she "proactively inform" father of issues and decisions regarding E.N.'s medical care and schooling.

{¶6} Mother continued to move among various locations in southern Indiana, often without informing father. She changed jobs frequently, working as a nanny, a substitute teacher, a teacher's aide, and a clerk at various shops. Mother moved E.N. back and forth four times between two different schools, often without consulting father, despite his hopes that E.N. would attend an Ohio parochial school where E.N.'s cousins were enrolled. Mother established a relationship with another man. Mother, E.N., and mother's second child moved in with the man less than five months after their first date. The two ultimately married.

{¶7} Father reported that he was not having sufficient visitation opportunities with E.N., and that mother persisted in failing to consult him on issues and decisions regarding E.N.'s medical care and schooling and to inform him of changes in E.N.'s life. Mother and father attempted to mediate their dispute but were unable to reach a mutually satisfactory outcome.

{¶8} Between February and October 2016, the magistrate conducted six days of hearings on custody. Sixteen witnesses, including mother, father, the GAL, Dr. Nelson, mother's ex-boyfriend, her current husband, and a number of character witnesses and family members, testified before the magistrate.

{¶9} On October 11, 2016, the magistrate issued a detailed, written decision. The magistrate noted that although father had filed for shared parenting as an alternative to his petition for sole custody, he had not provided documentation required to support his proposed shared-parenting plan. Moreover, she found that

because of mother's and father's inability to engage in "meaningful conversations" regarding E.N., shared parenting would not be appropriate.

{¶10} After reviewing the testimony of each witness and the relevant statutory factors in R.C. 3109.04(F), the magistrate allocated the parental rights and responsibilities for E.N.'s care to father, giving him legal custody. E.N. had a close, loving relationship with both of her parents. In reaching her determination, the magistrate noted concerns regarding mother's honesty about her drug and alcohol use, her exposure of E.N. to multiple men that she had known for only a short period of time, the multiple changes in residences and schools, and mother's current husband's interference in E.N.'s relationship with father. The magistrate also ordered that mother have substantial parenting time with E.N. and included a detailed visitation plan in her decision. Mother was working as a teacher's aide, and the visitation plan accommodated mother's extensive free time in the summer and during other school breaks.

{¶11} Mother timely filed an objection to the magistrate's decision, stating only that the decision was "erroneous." At the objections hearing, the juvenile court construed mother's bare-bones objection as one challenging the weight of the evidence adduced to support the magistrate's decision.

{¶12} Before the objections hearing, the parties discovered that some of the testimony of the GAL, and the entire testimony of mother's ex-boyfriend and father's sister, had not been recorded. At the hearing, the juvenile court permitted the parties to re-examine these witnesses.

{¶13} The juvenile court reviewed the record of the proceedings, overruled mother's objection, adopted the magistrate's decision as to custody, and entered judgment on May 3, 2017. Because of the seven-month delay between the

4

magistrate's decision and the juvenile court's ruling, the court modified the parenting time arrangements, and entered judgment. In its judgment, the juvenile court did not address the parents' responsibility for support of E.N. as required by R.C. 3109.04(A)(1). Mother appealed.

### *II. The Juvenile Court's Entry Was Final and Appealable*

{¶14} Because an appellate court's jurisdiction is limited to review of judgments or final orders, as may be provided by law, we must determine our own jurisdiction to proceed before reaching the merits of mother's appeal. *See* Article IV, Section 3(B)(2), Ohio Constitution; *see also* R.C. 2505.03(A); *Cincinnati v. Harrison*, 2017-Ohio-7580, 97 N.E.3d 743, ¶ 7 (1st Dist.); *In re L.S.*, 1st Dist. Hamilton No. C-140318, 2015-Ohio-1321, ¶ 6.

{¶15} In this appeal from the juvenile court's entry ordering a change of custody of the minor child from one parent to the other, the application of R.C. 2505.02(B)(2) determines our jurisdiction. It provides that an order is a final order "when it is * * * [a]n order that affects a substantial right made in a special proceeding * * *." An order affects a substantial right for purposes of R.C. 2505.02(B)(2) "only if 'in the absence of immediate review of the order [the appellant] will be denied effective relief in the future.' " *Thomasson v. Thomasson*, __ Ohio St.3d ___, 2018-Ohio-2417, __ N.E.3d __, ¶ 10, quoting *Bell v. Mt. Sinai Med. Ctr.*, 67 Ohio St.3d 60, 63, 616 N.E.2d 181 (1993); *see In re S Children*, 1st Dist. Hamilton No. C-170624, 2018-Ohio-2961, ¶ 11.

{¶16} Here, it is beyond cavil that custody proceedings brought in juvenile court did not exist at common law but were created by statute, and thus are special proceedings within the meaning of R.C. 2505.02(A)(2). *See State ex rel. Papp v. James*, 69 Ohio St.3d 373, 379, 632 N.E.2d 889 (1994); *see also In re Adams*, 115

Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶ 43; *In re L.A.*, 2014-Ohio-894, 9 N.E.3d 525, ¶ 4 (1st Dist.).

{¶17} Next, the General Assembly has defined a "substantial right" as "a right that the United States Constitution, the Ohio Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect." R.C. 2505.02(A)(1). Here, by operation of statute, mother was "the sole residential parent and legal custodian" of E.N. until the juvenile court's order designated father as the child's residential parent. *See* R.C. 3109.042. Moreover, the right "to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Thus the Ohio Supreme Court has held that "parental custody of a child is an important legal right protected by law and, thus, comes within the purview of a 'substantial right' for purposes of applying R.C. 2505.02." *In re Murray* at 157; *see Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (concluding that the federal constitution also "protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.").

{¶18} Finally, we hold that immediate review is necessary. The juvenile court order transferring the role of residential parent and legal custodian from mother to father, if left undisturbed, would have an immediate effect on mother's right to the custody and control of her child. That right is "perhaps the oldest of the fundamental liberty interests" recognized by our courts. *Troxel* at 65; *see In re Murray* at 157. It includes the right "to direct the upbringing and education" of one's child, *see Pierce v. Soc. of Sisters*, 268 U.S. 510, 534-535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), the right to communicate to the child a parent's moral and religious values,

*see Pater v. Pater*, 63 Ohio St.3d 393, 397, 588 N.E.2d 794 (1992), to direct their "religious upbringing," *see Wisconsin v. Yoder*, 406 U.S. 205, 213-14, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), to select, within reason, whether and what type of medical care the child will receive, *see In re Willmann*, 24 Ohio App.3d 191, 493 N.E.2d 1380 (1st Dist.1986), and to determine where and with whom the child will reside. And not the least of the rights pertaining to custody is the very companionship of one's own child.

{¶19} Denying those rights, for whatever period, would immediately diminish mother's most fundamental rights to the custody and control of her child. Mother would not be able to effectively protect her rights absent immediate review. No later adjudication of the juvenile court's order, coming, for example, only after the court had allocated the parents' child-support obligations, could restore the loss of custody and control for what could be a substantial period of time.

{¶20} Thus, juvenile court orders transferring legal custody from one parent to the other are immediately appealable under R.C. 2505.02(B)(2). *Compare Carpenter v. Carpenter*, 12th Dist. Butler No. CA2013-05-083, 2013-Ohio-4980, ¶ 13-14 (where a challenged custody order did not change which parent had legal custody, dismissing the appeal and requiring the court to enter a support order before appeal, would not result in immediate consequences for the appellant).

### III. The Merits of Mother's Appeal

{¶21} In her first assignment of error, mother contends that the juvenile court abused its discretion in adopting that portion of the magistrate's decision awarding legal custody of E.N. to father. She argues that the magistrate and the juvenile court failed to give full consideration to the testimony of the GAL and Dr. Nelson in reaching their determinations that it was in the best interests of E.N. for father to be her legal custodian.

7

**{¶22}** The juvenile court exercises its jurisdiction in child-custody matters in accordance with R.C. 3109.04. *See* R.C. 2151.23(F)(1); *see also In re James*, 113 Ohio St.3d 420, 2007-Ohio-2335, 866 N.E.2d 467, ¶ 25; *In re Adoption of G.A.R.*, 2017-Ohio-5612, 94 N.E.3d 99, ¶ 20 (1st Dist.). Under R.C. 3109.04(A)(1), the court is to decide to whom the parental rights and responsibilities for the care of a child shall be awarded, giving paramount consideration to the best interests of the child. *See In re V.B.*, 1st Dist. Hamilton No. C-170063, 2018-Ohio-2375, ¶ 10. We review the juvenile court's ruling on the objections and its decision to adopt the magistrate's custody decision only for a showing of an abuse of discretion. *See Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *see also In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, ¶ 11; *In re V.B.* at ¶ 10.

**{¶23}** Under the R.C. 3109.04 best-interests test, no single factor is controlling. The weight to be given to any factor also lies within the court's discretion. *See In re M., R., & H. Children*, 1st Dist. Hamilton No. C-170008, 2017-Ohio-1431, ¶ 34. Thus, the magistrate and the juvenile court were not bound to follow the GAL's and Dr. Nelson's initial recommendations made well before the custody hearings. *See In re Graham*, 167 Ohio App.3d 284, 2006-Ohio-3170, 854 N.E.2d 1126, ¶ 32 (1st Dist.). As with any other witness, the magistrate and the juvenile court were entitled to resolve disputes as to these witnesses' credibility and the weight to be given their testimony. *See In re V.B.* at ¶ 11.

**{¶24}** Here, the magistrate and the juvenile court reviewed and applied the best-interests factors under R.C. 3109.04. E.N. has a close, loving relationship with both of her parents, her younger brother, and her cousins. Mother's move to Indiana with E.N. established her intention to reside outside Ohio, and minimized the ability of father to share in E.N.'s upbringing. *See* R.C. 3109.04(F)(1)(j). Mother's current

husband, while concerned for E.N.'s well-being, has, with mother's acquiescence, failed to appreciate the importance of father's role in E.N.'s life. *See* R.C. 3109.04(F)(1)(c). Despite strong recommendations from Dr. Nelson and the GAL, mother failed to keep father informed about her changes of residence and to consult with him about important matters concerning E.N. Father adhered to his parenting-time schedule, promptly returning E.N. to her mother's custody. Considering these circumstances, coupled with mother's lack of candor regarding her alcohol and drug use, the magistrate found that father was more likely to honor and facilitate court-ordered parenting time. *See* R.C. 3109.04(F)(1)(d)-(f).

{¶25} The record reveals that E.N.'s mother and father are both capable and loving parents. Over the three-year course of the proceedings below, each was effective in highlighting deficiencies in the other's parenting skills. However, the magistrate's and the juvenile court's decision that father was better able to provide the stable environment and care necessary for E.N. is well supported in the record. *See In re D.M.*, 1st Dist. Hamilton No. C-140648, 2015-Ohio-3853, at ¶ 12; *In re V.B.*, 1st Dist. Hamilton No. C-170063, 2018-Ohio-2375, at ¶ 13. The first assignment of error is overruled.

{¶26} Mother's second assignment of error, in which she maintains that the trial court also committed plain error in adopting the magistrate's decision, is not well taken. Mother raised this assignment of error in anticipation of a determination by this court that she had not properly preserved error below by filing only a bare-bones objection to the magistrate's decision. Juv.R. 40(D)(3)(b)(ii) requires that objections to a magistrate's decision "shall be specific and state with particularity all grounds for objection." But father has not appealed from the juvenile court's

decision denying his motion to dismiss mother's objection for lack of specificity, nor has he assigned the court's ruling as error pursuant to R.C. 2505.22.

{¶27} In resolving the first assignment of error, we have already held that the juvenile court did not err in adopting the magistrate's custody determination. Absent error below, it is axiomatic that the juvenile court could not have committed plain error, which in this context contemplates, as a prerequisite, an error of such magnitude that, if left uncorrected, "would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *See Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997); *see also In re Etter*, 134 Ohio App.3d 484, 492, 731 N.E.2d 694 (1st Dist.1998). The second assignment of error is overruled.

### IV. Conclusion

{¶28} Having overruled both of mother's assignments of error, we affirm the judgment of the juvenile court allocating parental rights and responsibilities, designating father as the residential parent with legal custody of E.N., and determining mother's rights to continuing contact and parenting time. We remand this matter to the juvenile court to address the parents' responsibility for support as required by R.C. 3109.04(A)(1).

Judgment affirmed and cause remanded.

**ZAYAS** and **DETERS, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.