[Cite as *In re L.H.*, 2020-Ohio-718.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

IN RE:

    L.H.,

AN ALLEGED DEPENDENT CHILD.

[KATELYN M. - APPELLANT]

CASE NO. 4-19-14

**O P I N I O N**

Appeal from Defiance County Common Pleas Court
Juvenile Division
Trial Court No. 33925

**Judgment Affirmed**

Date of Decision: March 2, 2020

APPEARANCES:

    *Timothy C. Holtsberry* for Appellant

    *Chelsea R. Cereghin* for Appellee

**SHAW, P.J.**

{¶1} Mother-appellant, Katelyn M. ("Katelyn"), brings this appeal from the August 7, 2019, judgment of the Defiance County Common Pleas Court, Juvenile Division, adjudicating Katelyn's daughter L.H. a dependent child pursuant to R.C. 2151.04(C). On appeal, Katelyn argues that the trial court erred by finding L.H. to be a dependent child, that the trial court erred by making findings on issues that were not specifically stated in the complaint, and that the trial court erred by requiring the parties to submit written closing arguments.

*Background*

{¶2} Katelyn is the mother of L.H. who was born in February of 2014. Katelyn claimed that a man named "Javier" was L.H.'s father, but paternity has not been established and the record contains no further information regarding "Javier."

{¶3} On March 20, 2019, Katelyn was arrested at Walmart in Defiance for theft. At the time of the theft, L.H. was in a vehicle in the parking lot with two men. One of the men was found in possession of a handgun and methamphetamine, and the other man was arrested on an outstanding felony warrant.

{¶4} On March 21, 2019, the Defiance-Paulding County Consolidated Department of Job and Family Services ("the Agency") became involved with Katelyn and L.H. A caseworker from the Agency went to Katelyn's residence to conduct a screening intake of Katelyn due to Katelyn's arrest at Walmart while L.H.

was outside in the vehicle. The caseworker indicated that Katelyn was cooperative and that Katelyn had an appropriate home with some food in it; however, Katelyn had no income, no benefits, and she tested positive for marijuana at the time. Katelyn was also pregnant with another child.[1] The caseworker provided Katelyn information to sign up for various services but nothing was filed in court by the Agency at that time.

{¶5} On April 11, 2019, the caseworker returned to Katelyn's home to talk to her about the prior drug screen and to check and see if Katelyn had signed up for any of the recommended services. At that time, Katelyn tested positive for marijuana and methamphetamines. Katelyn had also not signed up for any recommended services.

{¶6} On May 7, 2019, the Agency filed a complaint alleging that L.H. was a dependent child pursuant to R.C. 2151.04(C). Subsequently, an attorney was appointed for Katelyn and a Guardian ad Litem ("GAL") was appointed for L.H.

{¶7} On May 22, 2019, a preliminary hearing was held on the complaint wherein the Agency requested that L.H. be placed in the temporary custody of Heather B., L.H.'s maternal grandmother, under the protective supervision of the Agency. Katelyn did not object to the Agency's request. Another preliminary

---

[1] The record indicates that Katelyn was not pregnant by the same man who was purportedly the father of L.H.

hearing was held June 5, 2019. At that time, Katelyn entered a plea of "Not True" to the dependency allegation.

{¶8} On June 12, 2019, a case plan was filed. The case plan stated that Katelyn and L.H. had a strong bond and that L.H. was physically/cognitively/socially on target for her age. The concerns listed in the case plan were Katelyn's positive drug tests on multiple occasions, her lack of income, and her arrest for shoplifting while L.H. was outside in a vehicle with one man who had a firearm and a bag of suspected methamphetamine and another man who had an outstanding felony warrant. The case plan required, *inter alia*, Katelyn to undertake a drug and alcohol assessment at a facility of her choice, to participate in scheduled appointments, and to communicate with providers.

{¶9} On June 28, 2019, an adjudicatory hearing was held wherein the Agency presented the testimony of two caseworkers who had been involved with Katelyn. Details were provided regarding Katelyn's arrest incident at Walmart and her subsequent positive drug tests. In addition, testimony was provided that Katelyn had not engaged in a drug assessment, and that L.H. was not up to date on medical vaccinations.

{¶10} At the conclusion of the Agency's case, Katelyn's attorney made a motion to dismiss, claiming that pursuant to *In re Burrell*, 58 Ohio St.2d 37 (1979), the Agency had to present clear and convincing evidence of adverse impact on the

child to establish the child as "dependent" pursuant to R.C. 2151.04(C), even though it was not a specific element in the statute. Katelyn's attorney argued that there was no testimony at all about a negative impact on the child. The State responded by arguing that they had not alleged abuse in this case and that L.H.'s environment was such that it warranted the state to assist in guardianship.

{¶11} After hearing the arguments regarding the motion to dismiss, the trial court stated as follows.

> **I see no evidence of an adverse impact on the condition of the child. There was testimony, however, that was clear, convincing, and unrefuted and not objected to regarding positive drug screens for illegal substances by the caretaker with no other identified parent and that occurred on or about the month of March, 2019. It is the Court's opinion that there [h]as been clear and convincing evidence that the child's environment was such that it warranted the state because of the risk that would be associated with the illegal drug use. However, with regard to the child's condition, there is in fact no evidence. The motion will be overruled on the limited basis that there has been sufficient evidence that the child's environment was such that it warranted the state to assume the child's guardianship.**

(June 28, 2019, Tr. at 26-27).

{¶12} Once the trial court denied the motion to dismiss, Katelyn rested without presenting any evidence. The case proceeded to closing arguments and the Agency indicated it would waive closing. Katelyn's attorney then renewed the motion to dismiss claiming that drug use by a parent alone was not enough to

establish a "dependent" child because there had to be a showing of a negative impact on the child pursuant to *Burrell*, if not the statute.

{¶13} After Katelyn's attorney's argument renewing the motion to dismiss, the trial court ordered the parties to submit written closing arguments "in the nature of supplemental closing arguments." (*Id*. at 28). The Agency filed a "supplemental closing argument" on July 5, 2019, and Katelyn filed a "closing argument" on July 8, 2019. On July 10, 2019, the Agency filed a rebuttal.

{¶14} On July 19, 2019, the trial court filed an entry summarizing the adjudicatory hearing. Ultimately the trial court determined that the Agency had presented clear and convincing evidence that L.H. was a dependent child "because her condition or environment was such that it warranted the State in the interest of that child to assume the child's guardianship on or about the month of March, 2019." (Doc. No. 22). The matter was then set for a dispositional hearing.

{¶15} On July 26, 2019, the GAL filed a report and recommendation regarding disposition. The GAL summarized her involvement in the matter and the case history.[2] The GAL then recommended that L.H. remain in the temporary custody of maternal grandmother under the protective supervision of the Agency.

---

[2] The GAL conducted a home visit of Katelyn's residence and found that while the home was "relatively clean and there were no visible hazards" the home did "smell like cigarettes and faintly of marijuana." (Doc. No. 28). The GAL's report also indicated that Katelyn had been found guilty of the Walmart theft incident on April 24, 2019. According to the report Katelyn received 30 days in jail with 28 suspended. Apparently Katelyn had also been charged with possession of drug paraphernalia and marijuana, but those charges were dismissed pursuant to plea negotiations. (*Id*.)

{¶16} The matter proceeded to a dispositional hearing on August 1, 2019. At the hearing the Agency requested that L.H. remain in the temporary custody of maternal grandmother for a period of one year, unless terminated earlier, with the Agency having protective supervision of L.H. for a period of one year, unless terminated earlier. The GAL agreed with the Agency's request, stating that it was in L.H.'s best interests. Defense counsel did not object to the Agency's dispositional request. The trial court then implemented the recommended disposition. A judgment entry memorializing the disposition was filed August 7, 2019. It is from this judgment that Katelyn appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The trial court erred in finding that the child, L.H., was dependent by clear and convincing evidence pursuant to R.C. 2151.04(C).**

**Assignment of Error No. 2**
**The trial court erred in not dismissing the Agency's R.C. 2151.04(C) complaint at the end of their case in chief as they had not presented any evidence as to a detrimental effect to the child, L.H.**

**Assignment of Error No. 3**
**The trial court erred in making findings on issues that were not plead in the complaint.**

**Assignment of Error No. 4**
**The trial court violated the mother's due process rights by allowing the state to submit written closing arguments after waiving closing arguments at trial.**

{¶17} We elect to address some of the assignments of error together, and out of the order in which they were raised.

*Third Assignment of Error*

{¶18} In the third assignment of error, Katelyn argues that the trial court erred by "making findings on issues that were not plead in the complaint." Specifically, she claims that the trial court should not have considered evidence related to Katelyn's Walmart arrest because it was not explicitly listed in the complaint as a factor leading to dependency.

Relevant Authority

{¶19} Revised Code 2151.27(A) provides the following with regard to filing complaints alleging dependency.

> **[A]ny person having knowledge of a child who appears * * * to be an unruly, abused, neglected, or dependent child may file a sworn complaint with respect to that child in the juvenile court of the county in which the child has a residence or legal settlement or in which the violation, unruliness, abuse, neglect, or dependency allegedly occurred. * * * The sworn complaint may be upon information and belief, and, in addition to the allegation that the child committed the violation or is an unruly, abused, neglected, or dependent child, the complaint shall allege the particular facts upon which the allegation that the child committed the violation or is an unruly, abused, neglected, or dependent child is based**.

R.C. 2151.27(A)(1).

{¶20} Juvenile Rule 10(B) also provides guidance regarding the filing of a dependency complaint. It reads as follows.

**(B) Complaint: General Form. The complaint, which may be upon information and belief, shall satisfy all of the following requirements:**

**(1)   State in ordinary and concise language the essential facts that bring the proceeding within the jurisdiction of the court, and in juvenile traffic offense and delinquency proceedings, shall contain the numerical designation of the statute or ordinance alleged to have been violated;**

**(2)   Contain the name and address of the parent, guardian, or custodian of the child or state that the name or address is unknown;**

**(3)   Be made under oath.**

{¶21} Ohio Appellate Courts have held that "[t]he basis of R.C. 2151.27(A)(1) and Juv.R. 10(B)(1) is twofold. " ' "First, in an action involving the possible severance of custody rights, a respondent to such a complaint is entitled to be apprised of the basis of the state's claim in order to properly prepare a defense. * * * Second, the juvenile court * * * must be able to ascertain at an early state of the proceeding whether or not it has jurisdiction over the subject matter of the claim." ' " *In re D.P.*, 10th Dist. Franklin Nos. 12AP–557, 12AP–655, 12AP–558, 12AP–558, 2013-Ohio-177, ¶ 12, quoting *In re Johnson,* 10th Dist. Franklin No. 00AP691 (Mar. 22, 2001), quoting *In re Sims,* 13 Ohio App.3d 37, 42–43 (12th Dist.1983).

Analysis

**{¶22}** In this case, the complaint alleged, in pertinent part, that L.H. appeared

to be a dependent child

> **in that on or about March, 2019, her condition or environment is
> such as to warrant the State, in the interests of the child, in
> assuming the [child]'s guardianship, to wit:  on or about March
> 21, 2019, the child's mother, Katelyn M[.], tested positive for
> marihuana; and on or about April 8, 2019 Katelyn tested positive
> for marihuana and methamphetamines; since that time [L.H.]
> was safety planned with her maternal grandmother.  In addition,
> Katelyn has not made adequate changes to allow for termination
> of the safety plan, she has not completed drug and alcohol
> assessment, obtained employment, or obtained food stamps or
> Medicaid after the Agency provided her with the applications;
> and paternity has yet to be established, and as such, said [child]
> appear[s] to be dependent * * * as defined in Ohio Revised Code
> Section 2151.04(C).**

(Doc. No. 1).

**{¶23}** Katelyn argues on appeal that there were issues with the complaint;

however, she never challenged the sufficiency of the complaint in this case in the

trial court.  "Failure to file a timely objection to a purported defect in the complaint

constitutes waiver."  *In re Barcelo*, 11th Dist. Geauga No. 97-G-2095, 2000 WL

489731 *5 citing *In re Dukes*, 81 Ohio App.3d 145, 150 (9th Dist.1991); *In re

G.J.D.*, 11th Dist. Geauga No. 2009-G-2913, 2010-Ohio-2677, ¶ 53.

**{¶24}** Nevertheless, while the face of the complaint satisfies the requisite

requirements, Katelyn is primarily concerned with the trial court making a finding

in its judgment entry that Katelyn was arrested at Walmart for theft when this issue

was not specifically listed in the complaint. Katelyn contends that because the Walmart arrest was not alleged in the dependency complaint, it was error for the trial court to rely on it when determining dependency in this matter.

{¶25} Notably, one of the principal reasons for stating the factual allegations in a complaint is to apprise the defendant of the potential issues that she may be facing. *See In re D.P.*, *supra*, at ¶ 12. In this case there can be no doubt that Katelyn was apprised of the Walmart theft as a potential issue.

{¶26} In the State's response to discovery, the State provided lists of police officers and the case number from a case filed with the Defiance Police Department. Then, in the case plan filed in this matter, the theft from Walmart was specifically and explicitly discussed as a concern in *multiple* places. This case plan was signed by Katelyn *prior to* the adjudicatory hearing.

{¶27} Moreover, the instant case was initiated by the Agency *because* of Katelyn's theft arrest at Walmart while L.H. was left outside in a vehicle in the care of a wanted felon and another man who was in possession of a handgun and methamphetamine. All indications in the record are that Katelyn was fully apprised of the theft as a potential issue. This seems particularly evident given that Katelyn *made no objections to testimony regarding the Walmart incident at the adjudicatory hearing*.

{¶28} For all of these reasons, we cannot find that the complaint was deficient, or that the trial court erred by making findings on issues that Katelyn claims were outside of those listed in the complaint due to her clear notification in this matter. Therefore, Katelyn's third assignment of error is overruled.

*First and Second Assignments of Error*

{¶29} In her first assignment of error, Katelyn argues that the trial court erred by finding that L.H. was a dependent child by clear and convincing evidence. In her second assignment of error, Katelyn argues that the trial court erred by failing to dismiss the dependency complaint at the close of the Agency's case because she claims the Agency did not present *any* evidence that there was a detrimental effect on L.H. as a result of Katelyn's actions. As both arguments deal with a discussion of the evidence, we will address them together.

Standard of Review

{¶30} A trial court's determination that a child is dependent under R.C. 2151.04 must be supported by clear and convincing evidence. *In re S.L.*, 3d Dist. Union Nos. 14-15-07, 14-15-08, 2016-Ohio-5000, ¶ 11, citing *In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 32, citing R.C. 2151.35. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477 (1954). "[W]hen 'the

degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof.' " *In re Freed Children*, 3d Dist. Hancock No. 5-08-37, 2009-Ohio-996, ¶ 26, quoting *Cross* at 477. Therefore, we are required to determine whether the trial court's determination is supported by sufficient evidence to satisfy the clear-and convincing-evidence degree of proof. *In re S.L.*, *supra*, at ¶11, citing *In re B.B.* at ¶ 33, citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985).

Analysis

**{¶31}** In this case, L.H. was alleged to be a dependent child pursuant to R.C. 2151.04(C), which defines a dependent child as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]"

**{¶32}** Katelyn argues that pursuant to the Supreme Court of Ohio's decision, *In re Burrell*, 58 Ohio St.2d 37, 39 (1979), a dependency adjudication under R.C. 2151.04(C) also requires evidence that the condition or environment is having "an adverse impact upon the child sufficiently to warrant state intervention" even though such is not listed in the statute. *Burrell* stated, "[t]hat impact cannot be simply inferred in general, but must be specifically demonstrated in a clear and convincing manner." *Id*. However, " ' " That being said, a court may consider a parent's

-13-

conduct insofar as it forms part of the child's environment." ' " *In re C.D.D.*, 11th Dist. Portage No. 2011-P-0065, 2012-Ohio-3302, ¶ 30, quoting *State ex rel. Swanson v. Hague,* 11th Dist. No.2009–A–0053, 2010–Ohio–4200, ¶ 24, quoting *In re Z.P.,* 5th Dist. No. 20008CA00209, 2009–Ohio–378, ¶ 17. Moreover, "circumstances giving rise to a legitimate risk of harm may suffice to support a dependency adjudication under R.C. 2151.04(C)." *In re S Children*, 1st Dist. Hamilton No. C-170624, 2018-Ohio-2961, ¶ 36, citing *In re M.E.G.*, 10th Dist. Franklin Nos. 06AP-1256, 06AP-1257, 06AP-1258, 06AP-1259, 06AP-1263, 06AP-1264 and Franklin Nos. 06AP-1265, 2007-Ohio-4308, ¶ 62 (children who were not the victims of sexual abuse deemed dependent where sibling had been sexually abused by father); *In re Savchuk Children*, 180 Ohio App.3d 349, 2008-Ohio-6877, 905 N.E.2d 666 (11th Dist.), ¶ 59, (infant's multiple and severe injuries that parents could not explain were sufficient to support a dependency finding as to unharmed siblings under R.C. 2151.04(C)); *In re A.P.*, 12th Dist. Butler No. CA2005-10-425, 2006-Ohio-2717 (dependency adjudication upheld where father had stabbed his live-in fiancée while A.P. was asleep in the other room, and where a 14-year-old had been left in charge for several hours after the stabbing); *In re C.T.*, 6th Dist. Sandusky No. S-18-005, 2018-Ohio-3823, ¶ 61 (mother's drug use, failure to address substance abuse, and overdose created an environment that was not appropriate for minor child.).

**{¶33}** In this case, the trial court made the following findings leading to its determination that L.H. was a dependent child pursuant to R.C. 2151.04(C).

> **3.  The Complaint alleges the child, [L.H.], to be a dependent child on or about the month of March of 2019, alleging her condition or environment was such that it warranted the State in the interest of that child to assume the child's guardianship.**
>
> **4.  Evidence from the Agency employee, Cally Martin, indicated that [L.H.] is five years old with a date of birth [in February of 2014]; that [L.H.'s] Mother is Katelyn M[.]; and that the name o[r] address of the Father of the child is unknown, and that Mother has only provided the Agency the first name of Javiar** [sic] **as the father.**[3]
>
> **5.  Ms. Martin testified that on March 21, 2019 Katelyn M[.] was arrested at Wal-Mart in Defiance for theft while her five year old daughter remained in her car with a man by the name of Don Dougal who was found to be in possession of a handgun at the time.**[4]
>
> **6.  Ms. Martin testified that Katelyn M[.] was cooperative but indicated that she had no income or benefits for the minor child.**
>
> **7.  Ms. Martin testified that Mother agreed to voluntary placement of her child that day pursuant to a safety plan, but that the efforts for the care of the child under the safety plan were unsuccessful and the Complaint was therefore filed on May 7, 2019.**
>
> **8.  The Court finds the Agency has presented clear and convincing evidence that the minor child, [L.H.], was a dependent child because her condition or environment was such that it warranted the State in the interest of that child to assume the child's guardianship on or about the month of March, 2019.**

---

[3] The transcript spells the name "Javier" but the trial court's entry uses the spelling "Javiar."

[4] It appears the arrest was actually on March 20, 2019, and the Agency visit with Katelyn occurred on March 21, 2019.

(Doc. No. 22).

{¶34} On appeal, Katelyn claims that the trial court's determination regarding dependency was erroneous because there was no evidence presented of any specific detrimental impact on L.H. pursuant to the Supreme Court of Ohio's ruling in *Burrell*, *supra*. In fact, Katelyn argues, at the adjudicatory hearing, when overruling the motion to dismiss, the trial court specifically stated that the Agency had presented no evidence of an adverse impact on the child.

{¶35} At the outset, we emphasize that *Burrell* is a short, "per curiam" opinion now over forty years old with questionable applicability to this case or even most dependency cases in general. *Burrell* overturned a dependency adjudication that was based *solely* on a woman living with her children and a man who was not her husband. The Supreme Court of Ohio found that absent other circumstances, the issue of cohabitating while unmarried, perhaps immoral to some at the time, was not sufficient to establish dependency when there was no indication that the environment was detrimental to the children. *Burrell* is clearly fact-specific and dealt with a parent's action that was not criminal, like the actions before us. There is little doubt that today a mother living with her child and an unmarried individual could not be the sole cause for a dependency finding absent extenuating circumstances. Thus we do not find *Burrell* dispositive in this matter.

**{¶36}** Nevertheless, Katelyn cites multiple cases in her brief standing for the proposition that illegal drug use by a parent, while inadvisable, is not enough *alone* to support a finding of dependency absent evidence that there is some detrimental impact on the child or that drugs were consumed in the presence of the child. *See In re Z.P.*, 5th Dist. Stark No. 2008CA0029, 2009-Ohio-378, ¶ 20 (affirming trial court's dismissal of a dependency complaint where, *inter alia*, there was no testimony as to when or where mother had used drugs or if the use had any impact on her supervision of her child); *In re. O.H.*, 9th Dist. Summit No. 25761, 2011-Ohio-5632, ¶ 18 (reversing a dependency finding where assuming record was sufficient to establish mother's alcohol abuse, there was no evidence that mother was failing to provide for child's needs).

**{¶37}** Katelyn's argument focuses specifically on her use of drugs, ignoring the fact that she was arrested for theft while L.H. was outside of Walmart in a car in the care of a wanted felon and a man possessing a firearm and suspected methamphetamine. It was the next day that Katelyn tested positive for marijuana and then weeks later she again tested positive for marijuana and methamphetamine—all while pregnant with another child. Despite this, Katelyn would not undertake drug and alcohol assessments pursuant to the case plan. In addition, at the time Katelyn had no source of income and L.H. was not up-to-date on her vaccinations.

{¶38} This is not a case of simple drug use in the abstract potentially outside of the care and presence of the child as Katelyn suggests. This is a situation of repeated drug use by the mother and of the mother placing the child in a terrible situation outside of a Walmart with questionable individuals while she committed a crime. Katelyn also showed poor judgment by repeatedly using drugs while pregnant. These issues establish that Katelyn was creating an environment around L.H. that was not appropriate.

{¶39} We do not dispute the cases Katelyn cited standing for the proposition that drug use by a parent in the abstract, away from a child, *could* be insufficient absent other circumstances to establish a dependency claim, but those facts are not what are before us. There are a number of issues that led to the dependency finding in this matter, and we cannot find that the trial court erred by determining that L.H. was a dependent child by clear and convincing evidence.

{¶40} Lastly, we cannot find that the trial court erred by declining to dismiss the complaint. While the trial court may have made some errant comments about there being "no evidence of an adverse impact on the condition of the child," the court's comments were obviated by its statement that the environment was a serious issue due to Katelyn's actions, which satisfies the elements of the offense. "Furthermore, even though the child's present 'condition or environment' is the focus of a dependency determination, 'the law does not require the court to

experiment with the child's welfare to see if * * * [the child] will suffer great detriment or harm.' " *In re B.B.*, 3d Dist. Defiance No. 4-10-17, 2012-Ohio-2695, ¶ 28, quoting *In re Burchfield*, 51 Ohio App .3d 148, 156 (1988). "[T]he child does not first have to be put into a particular environment before a court can determine that * * * [the] environment is unhealthy or unsafe." *Id.,* quoting *Id.*, citing *In re Campbell*, 13 Ohio App.3d at 36 (1983). For all of these reasons we do not find Katelyn's arguments in her first and second assignments of error well-taken. Therefore, her first and second assignments of error are overruled.

*Fourth Assignment of Error*

{¶41} In Katelyn's fourth assignment of error, she argues that the trial court erred by ordering that the parties provide "supplemental" written closing arguments after the Agency had already waived its closing argument at the adjudicatory hearing. Katelyn argues that permitting the Agency to have another chance at arguing in closing violated her due process rights and prejudiced her. We find no error here.

{¶42} At the conclusion of the adjudicatory hearing, the trial court asked the Agency if it had any closing argument. The Agency said it would waive closing. The trial court then addressed defense counsel regarding closing arguments; however, at that time, defense counsel renewed his motion to dismiss. The trial court heard defense counsel's argument, then ordered both of the parties to submit

written closing arguments with case law citations, withholding a ruling until the arguments were submitted. The trial court stated the written arguments would be in the nature of supplemental written closing arguments. The Agency was permitted to file its argument, then defense counsel was given the opportunity to respond, and the Agency had the chance to file a rebuttal closing argument if it chose to do so.

{¶43} Based on what occurred, we fail to see how there was any "due process" violation in this matter. The trial court was the ultimate arbiter of the evidence and gave each party the opportunity to present written closing arguments. Katelyn seems to suggest that since the Agency initially said it would waive its closing argument, the Agency should not have been able to file a supplemental written closing argument. However, the supplemental writing was ordered by the trial court so that the trial court could give the matter further consideration. There is no showing here of a due process violation or any prejudice to Katelyn since she had the full ability to respond, and the closing arguments did not change the evidence that was presented in any manner. Therefore her fourth assignment of error is overruled.

*Conclusion*

{¶44} For the foregoing reasons Katelyn's assignments of error are overruled and the judgment of the Defiance County Common Pleas Court, Juvenile Division, is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/jlr**